UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUAN CARLOS VILLA MOROCHO, | : : | Civil Action No. 25-17603 (BRM) |
| Petitioner, | : : | |
| v. | : : | **MEMORANDUM AND ORDER** |
| LUIS SOTO, *et al.*, | : : | |
| Respondents. | : : : | |

**THIS MATTER** is before the Court on Petitioner Juan Carlos Villa Morocho's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging his detention by immigration authorities without an individualized bond hearing (ECF No. 1.) Respondents filed a letter response (ECF No. 7) and Petitioner replied (ECF No. 8).

Petitioner, a citizen of Ecuador, who has been living in the United States who entered the United States without inspection in 2012. (ECF No. 4 at 4.) On November 9, 2025, Petitioner was arrested by Immigration Customs and Enforcement ("ICE") agents. (*Id.*) Petitioner has been in ICE detention since his arrest. Following Petitioner's arrest and detention by ICE, he has not been afforded an individualized bond hearing because he is being held in mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF No. 1 at 1.)

The Court ordered Respondents to file an answer. (ECF No. 3.) Respondents filed a letter response (ECF No. 7) and Petitioner replied (ECF No. 8).

The Petition contends Petitioner is unlawfully detained under 8 U.S.C. § 1225(b) without a bond hearing. (*See* ECF No. 1.) Respondents argue that Petitioner is lawfully mandatorily detained under § 1225(b)(1). (*See* ECF No. 7.) Respondents claim that in 2012 Petitioner was

placed in expedited removal proceedings and then was paroled into the United States based on an Immigration Judge's ("IJ") setting Petitioner's bond at $8,000. (*See id.* at 4.) Respondents submit that once Petitioner's parole was revoked, eleven years later, he returned to his status as detained under § 1225(b)(1). This argument is unconvincing and unsupported.

Respondents fail provide the Court with a Notice of Expedited Removal from 2012, nor do they provide the Court with any documentation from 2012 indicating that Petitioner was paroled under 8 U.S.C. § 1182(d)(5)(A). Instead, Respondents submit only Petitioner's recent November 2025 Record of Deportable/Inadmissible Alien, I-213 Form. The I-213 Form does not support Respondents' position that Petitioner was paroled into the United States in 2012. The I-213 Form submits that Petitioner "was processed as an expedited removal" and "claimed fear of returning to Ecuador." (ECF No. 7-1 at 2.) The I-213 Form further indicates, as Respondents argue, that an IJ then released Petitioner on $8,000.00 bond. (*See* ECF No. 7-1 at 2; *see also* ECF No. 7 at 4.) There is nothing in the 1-213 Form indicating that Petitioner's was paroled under § 1182(d)(5)(A) in 2012.

The fact that Petitioner was released by an IJ on bond does not support Respondents claim that Petitioner was paroled in the country in 2012. Under § 1225(b)(1) expedited removal proceedings, an immigration officer, not an IJ, conducts the initial fact-finding. 8 C.F.R. § 235.3(b)(2)(i). If the noncitizen claim asserts an intention to apply for asylum or a fear of persecution, the inspecting officer must refer them to a "credible fear interview," to be conducted by an asylum officer. 8 C.F.R. 235.3(b)(4). If that asylum officer finds the noncitizen to have a credible fear of persecution, the noncitizen will be moved either to full section 240 removal proceedings or to USCIS administrative asylum proceedings. 8 C.F.R. § 208.30(f). During this process, the noncitizen remains mandatorily detained under § 1225.

However, 8 U.S.C. § 1182(d)(5)(A) allows the Secretary of the Department Homeland Security ("DHS") to exercise its discretion to temporarily allow into the United States noncitizens who are applying for admission instead of holding them in detention.[1] Parole may be granted "under such conditions as [the DHS Secretary] may prescribe" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* The I-213 Form does not indicate that Petitioner was paroled into the country by the DHS Secretary, as would be required under Section 1882(d)(5)(A). Instead, the Form submits that Petitioner was placed on bond by an IJ. Respondents have failed to provide the Court with any documentation that the Secretary of DHS determined that Petitioner was to be paroled into the United States for an urgent humanitarian reason or based on a significant public benefit.

Additionally, the DHS Secretary may, in their discretion, terminate any grant of parole and return the noncitizen "to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). DHS may terminate a noncitizen's parole either "automatically" or "[o]n notice." 8 C.F.R. § 212.5(e)(1), (e)(2). A grant of parole terminates automatically, without written notice, (a) when the noncitizen departs the United States, or (b) "if not departed, at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). In all other cases, parole "shall be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2). Those other cases include when the "purpose for which parole was authorized" is "accomplish[ed]" or "when in the opinion of" the DHS Secretary or their delegee "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* Again, Respondents have failed to provide evidentiary support to show that DHS has now made an individual determination that, after Petitioner was present in the

---

[1] The Secretary has further delegated that authority by regulation to various officials below them, none of which are the IJs. *See* 8 C.F.R. § 212.5(a).

United States for eleven years, there is no longer a humanitarian reason, nor does public benefit warrant Petitioner's continue parole into the United States.

Finally, the Court notes that there are several types of "parole." 8 U.S.C. § 1182(d)(5)(A) allows for humanitarian parole by DHS of noncitizens detained under §1225(b), while 8 U.S.C. § 1226(a) allow for "conditional parole" of noncitizens detained under §1226(a). Additionally, § 1226(a) also allows for the release of a noncitizen on "bond of at least § 1,500." The record contains only the I-213 Form, which indicates that Petitioner was released on bond, not paroled under § 1182(d)(5)(A) in 2012. As Respondents have failed to offer any support for their position that Petitioner was paroled into this country eleven years ago as noncitizen detained under §1225(b)(1), the Court finds Petitioner similar to the countless number of noncitizens who have been recently unlawfully detained under § 1225.

Courts in this District, including this Court in the recent matter *Sandhu v. Tsoukaris*, No. 25-14607 (BRM), have considered whether noncitizens who are detained after having already been in this country are unlawfully held in mandatory detention under § 1225(b) and need to be treated as being held the discretionary authority of 8 U.S.C. § 1226(a). In *Sandhu*, Respondents argued DHS has implemented a new policy interpreting INA § 235, 8 U.S.C. § 1225(b)(2)(A), to require mandatory detention of noncitizens who entered the United States without admission or inspection and to render them ineligible for release on bond, a position that the Board of Immigration Appeals recently adopted in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

In *Sandhu*, this Court rejected *Hurtado's* interpretation of 8 U.S.C. § 1225(b)(2). *Sandhu*, No. 25-14607 (ECF Nos. 7, 8). The Court held that Sandhu was unlawfully held in mandatory detention under § 1225(b)(2) and need to be treated as being held the discretionary authority of 8 U.S.C. § 1226(a).

4

In *Sandhu*, this Court explained the following:

> The issue of whether Petitioner is properly detained under § 1225(b) or § 1226(a) is similar to that of many cases in this District and around the country. "The line historically drawn between these two sections . . . is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citing *Jennings*, 583 U.S. at 288–89); *see also Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").
>
> . . .
>
> For nearly 30 years, § 1225 has applied to noncitizens who are either seeking entry to the United States or have a close nexus to the border, and § 1226 has applied to those aliens arrested within the interior of the United States. The Supreme Court in *Jennings* explicitly adopted this distinction, describing § 1225 as the detention statute for noncitizens affirmatively "seeking admission" into the United States, and § 1226 as the detention statute for noncitizens who are "already in the country." [*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)]. And although the *Jennings* Court characterizes § 1225(b)(2) as the "catchall" detention provision for noncitizens who are "seeking admission," it identifies § 1226(a) as the "default rule" for the arrest, detention, and release of non-criminal aliens who are already present in the United States. *Id.* at 303.
>
> The vast majority of courts confronting this precise issue have rejected Respondents' interpretation, as well as the BIA's interpretation in *Hurtado*, as contradictory to the plain text of § 1225.[2] *See, e.g.*, *Soto* [*v. Soto, et al.*, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025)] (finding that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, "seeking admission" to the United States and not petitioners who have been residing in the United States); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947 at * 6 (D. Minn. Oct. 1, 2025) (noting that "the government's proposed interpretation of § 1225(b) [is] at odds with the context and structure of the provisions governing detention of noncitizens

---

[2] This Court is not required to defer to the BIA's interpretation of § 1225 because "[w]hen the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)).

who are arriving at the border and those who are already present in the country"); *Zumba*, 2025 WL 2753496 at * 3 (noting that "up until July 8 the predominant form of detention authority for petitioner and other noncitizens arrested in the interior of the United States was § 1226(a)"); *Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Roman v. Noem*, No. 25-cv-01684, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); *Giron Reyes v. Lyons*, No. 25-cv-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Singh v. Lewis*, No. 25-cv-0096, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Vazquez v. Feeley*, No. 2:25–cv–01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); [collecting additional cases].

*Sandhu*, No. 25-14607 (ECF No. 7 at 7–11).

Based on this Court's statutory interpretation in *Sandhu*, No. 25-14607, the Court finds the facts asserted in the Petition establish Petitioner was detained after being present in the United States and his detention is authorized only by 8 U.S.C. § 1226(a), and not § 1225(b).

Accordingly, and for good cause appearing,

**IT IS** on this 8th day of January, 2026

**ORDERED** the Petition (ECF No. 1) is **GRANTED**; and it is further

**ORDERED** Respondents shall treat Petitioner as detained under 28 U.S.C. § 1226(a); and it is further

**ORDERED** that, as soon as practicable but **no later than 7 days from the date of this Order**, Respondents shall provide Petitioner with an individualized bond hearing in accordance with 8 U.S.C. § 1226(a) before an immigration judge who shall assess whether he presents a flight risk or a danger to the community; and it is further

**ORDERED** within **3 business days** of that bond hearing, Respondents shall file a written notice of the outcome of that proceeding with the Court; and it is finally

6

**ORDERED** the Clerk of Court shall serve a copy of this Order and the accompanying Opinion upon the parties electronically.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**
